**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN HUNTINGTON DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA**

**v.** **CRIMINAL NO. 3:23-cr-00005**

**DAVID K. SMITH**
**WESTERN RIVER ASSETS, LLC, and**
**RIVER MARINE ENTERPRISES, LLC**

# DEFENDANT DAVID K. SMITH'S SENTENCING MEMORANDUM AND MOTION FOR VARIANCE SENTENCE

Defendant David K. Smith, by counsel, hereby submits his sentencing memorandum and motion for variance sentence.

## I. FACTS

### A. THE OFFENDER

The presentence report accurately records Captain Smith's history and personal characteristics: He has no criminal record; for 69 years has led a stable and productive life (married for 36 years; resident in the same home for 29 years); has been very active in civic and church life; and has contributed to the betterment of inland river transportation, working closely with the US Coast Guard and US Army Corps of Engineers (see exhibits 1 and 2). Unfortunately, economic and market conditions in the later part of his career caused financial and accumulated personal debt. Nevertheless, Captain Smith made significant contributions (of his time, knowledge, experience, and efforts) to the river transportation industry and the Port of Huntington. In summary, he has devoted his entire work life to river transport; he is an upstanding citizen and good man. He poses no risk of reoffending, his finances at this time include only his social security and stipend from the Waterways Journal, an industry publication.

### B. THE OFFENSE

Captain Smith also acted within the law and regulations and acted responsibly. After receiving the order in December 2017, he took action to comply therewith well before the January 30, 2018, deadline imposed. He contacted Safety Cleen company to remove all oil from the boat, but that vendor did not act prior to January 9-10, 2018, due to excessively muddy conditions on the riverbank. Captain Smith did not ignore the order or the regulations. He also maintained good and sufficient liability and pollution coverage. The pollution carrier denied coverage and litigated against the liability carrier, in New York, but the District Judge ruled in favor of the pollution carrier. [1]

[1] The New York Judge criticized the legal work of the liability insurer's counsel in that case with respect to summary judgment motions.

Also, Captain Smith violated no law by laying up the boat to the Big Sandy riverbank. The boat was not operated, nor intended to be operated on the rivers until and unless the boat could be returned to operational status in compliance with the rules governing operations on the rivers.

The cause of the sinking is in dispute, as demonstrated by expert reports submitted in the New York case. One fact, relating to the sinking does not appear in conflict: the pollution insurer's expert described various flaws in the boat, but the boat sank only after incurring a significant dent and split in the bottom of the hull, due to river conditions and ice on the night of January 9-10. Flaws described by the adverse expert existed before January 9-10; only the spilt caused the sinking and consequent discharge of oil. See Ex. 6 (expert report by Mr. Opp, Marine Surveyor, at p. 42).

The government contends approximately 3500 gallons of oil polluted the Big Sandy. The discharge caused Kenova to shut down its water treatment plant for three days. The oil eventually dissipated, leaving no permanent injury to the environment. No person suffered any bodily injury from the spill. Counsel is not aware of any claim of injury to fish or other wildlife. Clean-up expenses were substantial and should have been covered by the pollution carrier. As oil spills go, this was a not a knowing or egregious case. Rather, the sinking was caused by river conditions and ice. After three days Big Sandy's water was in sufficient good condition for Kenova to resume standard water treatment and distribution to its customers. The guidelines commentary Application Notes suggest that a reduction based on negligence should apply and here that is even more true because the offense of conviction is a strict liability crime. Defendant denies negligence and would have gone to trial on the negligence count. But there is no recognized defense -in this case- to the strict liability imposed by the Rivers and Harbors Act count.

## II. LEGAL EFFECT OF COMMENTARY

Guidelines commentary is to provide directions as to the interpretation and application of the guidelines, and to "suggest circumstances which, in the view of the commission, may warrant departure from the guidelines." USSG§1B1.7 "Significance of Commentary." In ***Stinson v. United States,*** 508 U.S. 36 (1993) the court held that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or federal statute, or is inconsistent with, or is a plainly erroneous reading of, that guideline." 508 U.S. 36, at 38, In ***Stinson***, the court reversed the 11th Circuit's holding that commentary, while persuasive , "was nor binding on sentencing courts." In this case the commentary regarding downward departures under §2Q1.3 is not unconstitutional and not inconsistent with the guidelines, and under ***Stinson*** and §1B1.7, the suggested departures are binding in this court (one discharge, one night). See also, ***Williams v. United States***, 503 U.S. 193, 201 (1992) (holding that guideline's policy statements are binding on a sentencing court.) Subsection (b)(1) provides for a departure up to two levels depending on: the harm from the discharge (actual pollution of oil); quantity of discharge (estimated 3500 gallons of bilge water/oil). There was no bodily harm to any person or animal, and the duration of discharge (one night, one discharge).

Application Note 3 provides that in a case "involving negligent conduct, a downward departure may be warranted." Captain Smith stands convicted of a strict liability offense; therefore, a downward departure should be granted. Each of the remaining commentary are dependent upon the harm caused, the quantity and nature of the pollutant, duration of the offense, and associated risks. A departure (down or up) of two levels is suggested. The discharge in this case caused no physical harm to people or wildlife, was short duration, of oil and oily bilge water, surely not the most nor the very least harmful pollutant, and without great risk to anyone. The relevant area of the Big Sandy River is not especially environmentally sensitive. Therefore, a two level downward departure for actual discharge is

appropriate. For disruption of Kenova's water utility, an additional two level reduction applies. Finally, the conduct occurred in the absence of a permit. Of course no permits are granted allowing the actual discharge of such materials. There is no applicable permit to be had, and no permit was contemplated by Captain Smith or any government agency. The discharge was, plain and simple, an accident. Therefore, two levels should be taken away. [2]

Under the binding terms of the above commentary, and in view of the facts, a total downward departure of six levels is appropriate. (i.e. level 18-6= level 12). Consideration of acceptance of responsibility (-2) and true first-time offender (-2), result in a final offense level of eight, with a sentencing range of 0 to 6 months.

**III. SECTION 3553 FACTORS**

Deterrence is not a genuine reason to incarcerate Captain Smith. His personal history and characteristics all call for a sentence of probation. He does not require, and would not benefit from, training or medical care or other BOP programs. 18USC3553(a) and (b).

The criminal conduct is actionable as a strict liability offense, with no adjacent violence, guns, drugs, and with no type of moral turpitude and no *mens rea*, probation is appropriate.

Finally, the court must avoid unwarranted sentencing disparity 18USC3553(a)(6), to treat like defendants committing like crimes the same. Despite reasonable efforts counsel could locate no data regarding Refuse Act convictions. The Sentencing Commission provides some data on Clean Water Act violations, but as for Refuse Act convictions, no data is available. Anecdotal evidence provided by knowledgeable sources indicates such prosecutions are very, very rare.

Federal Sentencing policy includes the concept of just punishment. Just punishment will be handed down by a sentence of probation.

**IV. APPLICATION NOTES TO SECTION 2Q1.3 COMPEL DOWNWARD DEPARTURES FROM LEVEL 18**

The court must impose a sentence "sufficient, but not greater than necessary," to comply with the purposes of sentencing set forth in 18 USC§3553(a). After first calculating the sentencing level per §2Q1.3 the result is level 18. After application of the substantive guidelines then apply the adjustments from Chapters Three and Four, which are 2 levels for acceptance of responsibility and a 2-level adjustment for the true first-time offender, with an adjusted offense level of 14. Next the Court must consider the commentary addressing upward and downward departures. Section 2Q1.3 applies to pollutants that are not hazardous or toxic materials. USSG§2Q1.2 and §2Q1.3 are premised upon "knowing" conduct and the commentary to each provides for downward departures from the specific offense characteristics that are based on knowing (generally felony) conduct. USSG§2Q1.3 comment. (Note 3.) USSG§2Q1.2, comment. (Note 4). The final prison range is 0 to 6 months. A sentence of probation clearly will result in justice.

[2] There are likely many similar accidental oil discharges. We submit such accidents, generally (see Ex. 1 and 2) are met with administrative and civil enforcement tools, but not criminal prosecution.

**V: MOTION FOR VARIANCE**

For all the reasons discussed above, Captain Smith respectfully moves the Court to vary from the guidelines to a level allowing a sentence of probation. [3]

**VI: RESITUTION**

As shown in the presentence report Captain Smith has no ability to pay more than *de-minimus* restitution.

**VII: CONCLUSION**

The purposes and policies of Federal Sentencing will be served by a sentence of one year probation. No good purpose will be served by putting Captain Smith in prison.

/s/ S. Benjamin Bryant
S. Benjamin Bryant (WVSB No. 520)
Carey Douglas Kessler & Ruby, PLLC
707 Virginia Street, East
Suite 901
Charleston, WV 25301
Telephone: (304) 345-1234
sbbryant@cdkrlaw.com

SBB/snj

[3] Neither DOJ nor EPA rushed into this prosecution. The statute of limitations was about to expire on January 9, 2023, when the Department of Justice filed the information in the cases, indicating the offense was not a high-level or very important matter to the government.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN HUNTINGTON DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA**

**v.** **CRIMINAL NO. 3:23-CR-00005**

**DAVID K. SMITH,**
**WESTERN RIVER ASSETS, LLC, and**
**RIVER MARINE ENTERPRISES, LLC**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 1st, day of April, 2024, the foregoing "Defendant David K. Smith's Sentencing Memorandum and Motion for Variance Sentence" was served using the Court's CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

Erik S. Goes, AUSA
Perry D. McDaniel, Special AUSA
Office of the United States Attorney
845 5th Avenue, #209
Huntington, WV 25701

U.S. Probation Office
845 5th Avenue #324
Huntington, WV 25701

/s/ S. Benjamin Bryant
S. Benjamin Bryant (WVSB No. 520)